Filed 3/5/13  Clean Conversion Technolgies v. CleanTech Biofuels CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| CLEAN CONVERSION TECHNOLOGIES, INC., et al., Cross-complainants and Respondents, v. CLEANTECH BIOFUELS, INC., Cross-defendant and Appellant. | G046589 (Super. Ct. No. 30-2011-00483341) O P I N I O N |
| STEVE VANDE VEGTE, Plaintiff, v. EDWARD CAMPOS et al., Defendants. | (Super. Ct. No. 30-2011-00482577) |

Appeal from an order of the Superior Court of Orange County, James Di Cesare, Judge.  Affirmed.

Buchalter Nemer, Robert M. Dato and Michael L. Meeks for Cross-defendant and Appellant.

Higgs, Fletcher & Mack, John Morris, Victoria E. Fuller, James M. Peterson and Kevin L. Wheeler for Cross-complainants and Respondents.

\*          \*          \*

The court, in a thorny litigation matter over technology licensing and investment fraud, denied a motion to compel arbitration of the issues arising under a cross-complaint. It held that there was an apparent risk of conflicting rulings between an arbitration decision on the cross-complaint and a judgment on the complaint. Moving party and cross-defendant CleanTech Biofuels, Inc. appeals. We affirm. The risk of conflicting rulings is clear.

I

FACTS

A.  *Fraud in the Inducement Lawsuit:*

Steve Vande Vegte filed a complaint against five individuals alleged to be officers, directors and managers of, or legal counsel for, Clean Earth Solutions, Inc., a waste management company. (*Vande Vegte v. Campos* (Super. Ct. Orange County, No. 30-2011-00482577) (Fraud in Inducement Lawsuit).) According to Vande Vegte's allegations, the defendants represented to him that they had acquired certain equipment from World Waste Technologies and were in the process of purchasing certain intellectual property rights from that company as well. Allegedly, the defendants represented that they needed immediate funding for pending obligations, including the completion of the intellectual property purchase, and Vande Vegte invested an initial $1 million in Clean Earth Solutions, Inc. based on their representations. In his complaint, Vande Vegte alleged that he had lost his entire investment due to fraud and conspiracy.

*B. Fraudulent Transfer Lawsuit:*

   *(1) Complaint—*

   Less than a week later, Vande Vegte filed another complaint, against some of the same defendants as well as certain others, including Clean Conversion Technologies, Inc., and CleanTech Biofuels, Inc.[1] (*Vande Vegte v. Failla* (Super. Ct. Orange County, 30-2011-00483341) (Fraudulent Transfer Lawsuit).)[2]  In the complaint in the Fraudulent Transfer Lawsuit, Vande Vegte alleged that CleanTech Biofuels, Inc. was the licensor of certain pressurized steam classification technology, having acquired the patent from World Waste Technologies, and that Clean Earth Solutions, Inc. was the licensee.  He further alleged that Clean Earth Solutions, Inc. had purchased $7 million in equipment from World Waste Technologies for use in connection with the licensed technology.

   Vande Vegte claimed that his investment, which had increased to $1.3 million, was in the nature of a loan, secured by a UCC-1 financing statement against the pressurized steam classification equipment.  He represented that his loan had not been repaid when due.  Accordingly, he had filed a lawsuit against Clean Earth Solutions, Inc. in San Diego Superior Court and had obtained a default judgment in the amount of

---

[1]   The court consolidated the two lawsuits.

[2]   Curiously, CleanTech Biofuels, Inc. did not designate the complaint in the Fraudulent Transfer Lawsuit as a part of the record on appeal.  This omission was not lost on CleanTech Biofuels, Inc., inasmuch as it found itself unable to provide a record reference for the complaint in its opening brief.  Although it offered a parenthetical reference to a motion to augment, this court has no record of a motion to augment ever having been filed.  Having noticed the deficiency in the record, this court notified the parties that it intended to augment the record on its own motion to include a copy of the complaint in the Fraudulent Transfer Lawsuit, and gave the parties an opportunity to object.  No objection having been received, this court, by order of January 23, 2013, augmented the record to include a copy of the complaint.  We are dismayed, to say the least, at this material omission from the record.

$1,616,977.56.  (*Vande Vegte v. Clean Earth Solutions, Inc.* (Super. Ct. San Diego, 2011, No. 37-2010-00059236) (Loan Repayment Lawsuit).)

In the Fraudulent Transfer Lawsuit, Vande Vegte alleged that, after the Loan Repayment Lawsuit was filed, the board of Clean Earth Solutions, Inc. transferred the company's primary assets—the equipment, valued at $7 million, and the intellectual property rights, valued at $940,000, to a newly created shill company—Clean Conversion Technologies, Inc.  He explained that Clean Earth Solutions, Inc. had entered into a 20-year sublicense with Clean Conversion Technologies, Inc. and Michael Failla, who had been one of the founding shareholders of Clean Earth Solutions, Inc. and who also had formed Clean Conversion Technologies, Inc.  Vande Vegte also asserted that in addition to sublicensing the intellectual property rights, Clean Earth Solutions, Inc. transferred to Clean Conversion Technologies, Inc. the license "itself"—ostensibly meaning all of the rights of Clean Earth Solutions, Inc. under the license agreement with CleanTech Biofuels, Inc.[3]  Of particular importance, Vande Vegte alleged that after the transfer of the intellectual property rights to Clean Conversion Technologies, Inc. and Failla, CleanTech Biofuels, Inc. pronounced that the unauthorized transfer had effectuated an automatic termination of the license agreement.

Vande Vegte, in the Fraudulent Transfer Lawsuit, framed causes of action for fraudulent transfer, breach of fiduciary duty, and declaratory relief.  He asserted, inter alia, that the transfers of the equipment and intellectual property rights to Clean Conversion Technologies, Inc. were voidable pursuant to Civil Code sections 3439.04,

---

[3]     The parties use inconsistent terminology in referring to the rights under the license, stemming from the Amended and Restated License Agreement dated August 18, 2003, and the rights under the sublicense, arising under the Technology License Agreement dated September 16, 2010.  For ease of reference, we shall simply refer to them as rights under the license or the sublicense, or collectively as the intellectual property rights, and will refer to the "transfer" of the rights even when meaning to encompass both transfers.

4

3439.05 and 3439.07, and he sought a court order setting aside the transfers. In his declaratory relief cause of action, Vande Vegte requested the court to declare: (1) the transfer of intellectual property rights had been "avoided"; (2) the attempted transfer of intellectual property rights was void; (3) the "avoided" intellectual property rights under the license and sublicense remained valid and enforceable; and (4) the "avoided" intellectual property rights in the license and sublicense were subject to levy by him.

*(2) Demurrer—*

CleanTech Biofuels, Inc. filed a demurrer to the cause of action for declaratory relief. It argued that Vande Vegte lacked standing to seek declaratory relief and the claim for declaratory relief was not ripe for judicial determination.

The court sustained the demurrer without leave to amend. First, it held that Vande Vegte had no standing to seek declaratory relief concerning licensing and sublicensing agreements to which he was not a party. Second, it held that the question he raised was not ripe for review. The court explained: "[Vande Vegte] is in essence seeking a declaration of rights based on the following scenario: if the transfer of the license agreement/sublicensing rights to Defendants Failla and Clean Conversion were fraudulent and therefore void, and if upon . . . the finding that the transfer is void, CleanTech refuses to rescind its termination of the licensing agreement, then what would the rights of the parties be with regard to the agreements at issue? These are not the actual facts, but rather, supposition. Because the facts are hypothetical at this time, then the dispute is not concrete. Therefore, the controversy fails to satisfy the first prong of the ripeness test."

*(3) Cross-complaint—*

Clean Conversion Technologies, Inc. and Failla filed a cross-complaint for declaratory relief against CleanTech Biofuels, Inc. and Vande Vegte. Clean Conversion Technologies, Inc. sought, inter alia, declarations that: (1) the transfer of the intellectual

5

property rights, under the license and sublicense, to Clean Conversion Technologies, Inc. was valid and Clean Conversion Technologies, Inc. was the lawful owner of the rights under the license and the lawful sublicensee; and (2) the purported termination of the license by CleanTech Biofuels, Inc. was void.

*(4) Motion to compel arbitration—*

In response, CleanTech Biofuels, Inc. filed a motion to compel arbitration. CleanTech Biofuels, Inc. stated that when it terminated the license with Clean Earth Solutions, Inc., it became the licensor under the sublicense agreement with Clean Conversion Technologies, Inc. as sublicensee. CleanTech Biofuels, Inc. also said that the sublicense agreement contained an arbitration provision it sought to invoke.

Paragraph 8.7 of the sublicense provides in pertinent part: "All claims, disputes and other matters in question arising out of or relating to this Agreement or the breach or interpretation thereof shall be resolved by binding arbitration before a representative member, selected by the mutual agreement of the parties, of the Judicial Arbitration and Mediation Services, Inc. ('JAMS'), in accordance with the rules and procedures of JAMS then in effect. . . ."

CleanTech Biofuels, Inc. stated that the cross-complaint against it sought a judicial determination of whether the transfer of the intellectual property rights, under the license and sublicense, to Clean Conversion Technologies, Inc. was valid and whether the termination of the license by CleanTech Biofuels, Inc. was void. It asserted that whether these issues fell within the purview of the arbitration provision was a matter for the arbitrator to decide. CleanTech Biofuels, Inc. requested that the court compel arbitration and stay the litigation on the cross-complaint pending arbitration.

The court denied the motion, holding that there was a risk of conflicting rulings if the motion to compel arbitration were granted. CleanTech Biofuels, Inc. appeals.

6

II

DISCUSSION

A. *Code of Civil Procedure Section 1281.2:*

Code of Civil Procedure section 1281.2 provides in pertinent part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] . . . [¶] (c) A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." (Code Civ. Proc., § 1281.2, subd. (c).)

The statute further provides: "If the court determines that a party to the arbitration is also a party to litigation in a pending court action or special proceeding with a third party as set forth under subdivision (c) herein, the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding." (Code Civ. Proc., § 1281.2.)

"We review an order denying arbitration pursuant to Code of Civil Procedure section 1281.2, subdivision (c) for abuse of discretion. [Citations.] Under this deferential standard of review, 'the trial court's order will not be disturbed on appeal unless it exceeds the bounds of reason.' [Citation.]" (*Abaya v. Spanish Ranch I, L.P.* (2010) 189 Cal.App.4th 1490, 1496, fn. omitted.)

7

*B. Analysis:*

CleanTech Biofuels, Inc. claims the court abused its discretion in denying its motion based on a finding that there would be a risk of inconsistent rulings if the issues raised in the cross-complaint were submitted to arbitration. We disagree.

"'While there is a strong public policy in favor of arbitration, there is an "equally compelling argument that the Legislature has also authorized trial courts to refuse enforcement of an arbitration agreement [or stay the arbitration] when, as here, there is a possibility of conflicting rulings.'" [Citation.]" (*Abaya v. Spanish Ranch I, L.P.*, *supra*, 189 Cal.App.4th at p. 1497.) "The legislative history of section 1281.2 defines the problem the Legislature intended to address: 'In actions involving multiple parties with related claims, where some claimants agree to arbitrate their differences and others remain outside the agreement, *arbitration is unworkable*. Where a party to an arbitration agreement is also party to a pending court action or special proceeding, with such a third party, there may be a possibility of conflicting rulings on issues of law or fact.' [Citation.]" (*Abaya v. Spanish Ranch I, L.P.*, *supra*, 189 Cal.App.4th at p. 1497.)

CleanTech Biofuels, Inc. maintains that there is no possibility of inconsistent rulings. It says that, on the one hand, the arbitration would not reach the issue of whether the transfer from Clean Earth Solutions, Inc. to Clean Conversion Technologies, Inc. was fraudulent. It further states that, on the other hand, the issue of CleanTech Biofuels, Inc.'s termination of the license agreement would not be put before the trial court because Vande Vegte's cause of action for declaratory relief has been dismissed.

This reasoning is not persuasive. The same transaction—the transfer of the intellectual property rights from Clean Earth Solutions, Inc. to Clean Conversion Technologies, Inc. and Failla—is at issue in both the Fraudulent Transfer Lawsuit complaint and the cross-complaint. The transfer is a common fact under each pleading.

8

After the declaratory relief cause of action in the Fraudulent Transfer Lawsuit complaint was dismissed, there remained three causes of action—two for fraudulent transfer and one for breach of fiduciary duty. In furtherance of those three causes of action, Vande Vegte requests that the court find the transfer of intellectual property rights to be fraudulent and set it aside as void, enjoin the disposition of the intellectual property rights by Clean Conversion Technologies, Inc. and Failla, order an attachment against the intellectual property rights, order that Vande Vegte himself may levy on the intellectual property rights, and award Vande Vegte damages for breach of fiduciary duty in connection with the purportedly fraudulent transfer.

In its cross-complaint, as we have noted, Clean Conversion Technologies, Inc. sought a judicial declaration, as against CleanTech Biofuels, that: (1) the transfer of the intellectual property rights to Clean Conversion Technologies, Inc. was valid; and (2) the attempted termination of the intellectual property rights by CleanTech Biofuels, Inc. was void. It also sought a judicial declaration, as against Vande Vegte, that, inter alia, the transfer of the intellectual property rights to Clean Conversion Technologies, Inc. was proper.

CleanTech Biofuels, Inc. sought the arbitration of the declaratory relief claims of Clean Conversion Technologies, Inc. and Failla against it, and a stay of the action on the cross-complaint pending arbitration. Had this request been granted, the possibility of inconsistent rulings is evident.

In one scenario, the arbitrator could rule that the transfer without the consent of CleanTech Biofuels, Inc. was unauthorized and the termination of intellectual property rights was proper. In that case, presumably, Clean Earth Solutions, Inc. would have no remaining intellectual property rights. In another scenario, the trial court could determine that the transfer was fraudulent and set it aside as void, such that Clean Earth Solutions, Inc. would regain what intellectual property rights it previously had. And,

9

presumably, there would be no transfer to trigger any termination right by CleanTech Biofuels, Inc. In the first scenario, Clean Earth Solutions, Inc. would have no intellectual property rights upon which Vande Vegte, if successful at trial, could levy, but in the second scenario, the opposite would be true. Clearly, the two forums could provide contradictory outcomes.

In an effort to dissuade us from this conclusion, CleanTech Biofuels, Inc. argues that if Vande Vegte prevailed in the trial court, he would be entitled to a damages award, which would not be affected by the termination of the intellectual property rights. This viewpoint seeks to circumscribe Vande Vegte's remedies. Yes, he seeks damages for breach of fiduciary duty, but he also seeks to levy upon the intellectual property rights, following a finding in his favor on the fraudulent transfer causes of action. He obtained a $1,616,977.56 default judgment in the Loan Repayment Lawsuit already, only to learn that the assets upon which he wanted to levy had disappeared. Consequently, the relief he seeks in the Fraudulent Transfer Lawsuit goes beyond damages and includes the right to levy on the intellectual property rights.

We cannot say the trial court, in denying the motion, exceeded the bounds of reason. Consequently, we cannot conclude that the court abused its discretion.

As an aside, we note that there may have been alternate means for addressing the issue, such as staying one of the proceedings. However, CleanTech Biofuels, Inc. does not argue "on appeal that the court abused its discretion in choosing among the alternative means of addressing the situation. [Its] argument is that the court erred in finding that there was any possibility of conflicting rulings on common issues of law or fact. We reject that argument." (*Abaya v. Spanish Ranch I, L.P.*, *supra*, 189 Cal.App.4th at p. 1499.)

10

### III

### DISPOSITION

The order is affirmed.  Respondents shall recover their costs on appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.